**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BRANDI L. MCKENZIE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION NO. 3:12-250** |
| | ) | |
| **v.** | ) | **JUDGE KIM R. GIBSON** |
| | ) | |
| **DEMATIC CORP., et al.,** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION AND ORDER OF COURT**

### I. Introduction

This matter comes before the Court upon consideration of Defendants' motion for summary judgment. (ECF No. 54). The issues have been fully briefed, and the Court held oral argument on February 17, 2015. The motion is now ripe for disposition. For the reasons that follow, the Court will deny Defendants' motion for summary judgment.

### II. Jurisdiction and venue

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to the claims occurred in this judicial district.

### III. Background

#### a. Procedural

This case was originally filed in the Court of Common Pleas of Somerset County. Defendants removed the case to this Court pursuant to 28 U.S.C. §§1332 and 1441 because

complete diversity of citizenship exists between Plaintiff and Defendants and the amount in controversy exceeds $75,000. (ECF No. 1 at 3–4).

### b. Factual

The Plaintiff, Ms. Brandi Lynn McKenzie, was employed as a split-case picker by CVS Caremark at the CVS distribution facility in Somerset, Pennsylvania. (ECF No. 56 at ¶ 1). Plaintiff had initially worked as a split-case picker at the CVS facility from July 2006 until July 2009 during college summer recess. (ECF No. 56 at ¶2; ECF No. 58 at ¶ 2). Plaintiff then returned to work at the CVS facility in 2010. (ECF No. 56 at ¶ 2).

As a split-case picker, Plaintiff was tasked with collecting merchandise from shelves and placing it into plastic bins called "totes," which are sent to individual CVS stores. (*Id.* at ¶ 3). Split-case pickers are given instructions through headsets regarding the types and quantities of merchandise to be placed in each tote. (*Id.*). Split-case pickers also perform other work, including but not limited to cleaning and general housekeeping in their work areas and on the conveyors. (ECF No. 58 at ¶ 3). Each split-case picker is assigned to a line, which is comprised of shelves containing the merchandise on one side, and a series of conveyors on the other side. (ECF No. 56 at ¶ 4). They use a conveyor with non-powered rollers to hold the totes on which they are working and to roll the totes along the line. (*Id.*). The middle conveyor is powered and is used to move completed (filled) totes to the loading dock at the end of the line. (*Id.*). Another group of split-case pickers works at a non-powered conveyor on the other side of the middle conveyor. (*Id.*). Both groups share the middle powered roller conveyor. (*Id.*). In addition to these

conveyors, there is a powered belt conveyor that hangs above the powered roller conveyor that is used to transport finished totes to the loading dock. (*Id.* at ¶ 5). This conveyor is used to transport empty merchandise containers and other trash to a baler. (*Id.* at ¶ 6). Split-case pickers put trash onto the conveyor. (ECF No. 58 at ¶ 7). The facility in this case has been used as a distribution facility by every owner of the facility from the time the trash conveyor was installed in 1969 until the present. (ECF No. 56 at ¶ 9).

When Plaintiff began working at the CVS facility in 2006, she watched a video concerning lock-out/tag-out procedures. (ECF No. 56 at ¶ 20). Plaintiff watched the same video again in 2010 when she resumed employment at the CVS distribution facility. (*Id.* at ¶ 21). In conjunction with the training, Plaintiff signed a document regarding safety procedures dated May 18, 2010, acknowledging that she "fully underst[ood] and … had [the] opportunity to ask questions about the information provided" in the document." (*Id.* at ¶ 22).

On July 6, 2010, Plaintiff was walking up the aisle next to the non-powered roller conveyor when she noticed a piece of plastic, which, according to Plaintiff, was loosely flapping as the roller, to which it was stuck by a sticker, spun around. (ECF No. 58 at ¶ 26). The plastic was thin and clear, similar to cellophane. (ECF No. 56 at ¶ 27). Plaintiff attempted to remove the piece of plastic. (ECF No. 56 at ¶ 30). She did not slip or get bumped by another person when she reached toward the plastic. (ECF No. 56 at ¶ 40).

Plaintiff's right arm was severely and permanently injured when her hand and arm were pulled into the unguarded nip-point on the motorized belt trash conveyor. (ECF No. 58 at ¶ 47). According to Plaintiff, her fingertips inadvertently came into contact with

the unguarded nip-point on the trash conveyor and the rubber on the Plaintiff's gloves became stuck to the metal roller. (*Id.* at ¶ 81). Her hand and arm were then slowly sucked into the conveyor. (*Id.* at ¶ 82). Plaintiff testified that she started screaming for someone to help her and was forced to climb up on the bottom roller conveyor as she was being sucked into the trash conveyor. (*Id.* at ¶ 83). She further testified that while this was happening, other employees frantically searched for an emergency shut-off switch. (*Id.* at ¶ 84). She stated that she suffered excruciating pain as the top of her arm was being badly burnt from the friction of the running conveyor belt and as her arm was slowly being bent as it was pulled into the conveyor. (*Id.* at ¶ 85). She also testified that she repeatedly screamed that her arm was going to break. (*Id.* at ¶ 86). Eventually the trash conveyor violently snapped the bones in her forearm. (*Id.*).

## IV. Legal Standard

### a. Summary judgment

Summary judgment is appropriate when "there is no genuine issue as to any material fact. . . and the moving party is entitled to judgment as a matter of law." *Melrose, Inc. v. Pittsburgh,* 613 F.3d 380, 387 (3d Cir. 2010) (quoting *Ruehl v. Viacom, Inc.,* 500 F.3d 375, 380 n.6 (3d Cir. 2007)); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); FED. R. CIV. P. 56(a).[1] Issues of fact are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *see also McGreevy v. Stroup,* 413 F.3d 359, 363 (3d Cir. 2005). Material facts

---

[1] Rule 56 was revised in 2010. The standard previously set forth in subsection (c) is now codified as subsection (a). The language of this subsection is unchanged, except for "one word—genuine 'issue' bec[ame] genuine 'dispute.'" FED. R. CIV. P. 56 advisory committee's note, 2010 amend.

are those that will affect the outcome of the trial under governing law. *Anderson*, 477 U.S. at 248. The Court's role is "not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009). "In making this determination, 'a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.'" *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party meets this burden, the party opposing summary judgment "may not rest upon the mere allegations or denials" of the pleading but "must set forth specific facts showing that there is a genuine issue for trial." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 n.11 (1986)).

"For an issue to be genuine, the nonmovant needs to supply more than a scintilla of evidence in support of its position—there must be sufficient evidence (not mere allegations) for a reasonable jury to find for the nonmovant." *Coolspring Stone Supply v. Am. States Life Ins. Co.*, 10 F.3d 144, 148 (3d Cir. 1993).

### V. Discussion

#### a. The Second Restatement

Defendants filed the instant motion for summary judgment while the Pennsylvania Supreme Court had yet to decide whether or not to adopt the principles of the Restatement (Third) of Torts: Products Liability §§ 1 *et seq.* The Pennsylvania Supreme Court subsequently declined to adopt the Restatement (Third) of Torts. *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014). Thus, the principles of the Second Restatement of Torts govern this case.

Defendants initially argued in their summary judgment brief that Plaintiff's negligence claim could not act as a stand-alone claim under the Third Restatement, but rather was subsumed within her claims for design defect (Count I) and Failure to Warn (Count II). (ECF No. 55 at 7). Defendants now concede that under *Tincher* negligence remains a viable stand-alone claim in a product liability case. (ECF No. 64 at 9, citing *Tincher*, 104 A.3d at 340).

Defendants assert that Plaintiff's claims fail for reasons of causation, and that principles of causation remain unchanged by the ruling in *Tincher*. (ECF No. 64 at 8). For the reasons below, the Court finds that Plaintiff has raised genuine disputes of material fact that must be resolved by the factfinder at trial.

#### b. Count I – Strict Liability Design Defect

Plaintiff's first claim asserts that her accident and injuries were caused by an unguarded nip point on the trash conveyor designed, manufactured and installed by the

Defendants. (ECF No. 1-2 at 7). Defendants have raised assumption of risk and unforeseeable product misuse as defenses to this strict liability design defect claim. (ECF No. 6 at 10–11).

### i. Assumption of the risk

Assumption of the risk is an affirmative defense under the Restatement (Second) of Torts. *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1095 (Pa. 2012) (quoting the Restatement: "If the defendant would otherwise be subject to liability to the plaintiff, the burden of proof of the plaintiff's assumption of risk is upon the defendant." Restatement (Second) of Torts § 496G). In addition, assumption of risk is only relevant "where there would otherwise be a breach of some duty owed by the defendant to the plaintiff. It is then a defense, which relieves the defendant of the liability to which he would otherwise be subject. The burden of proof is therefore upon the defendant." *Id.* at 1096 (quoting Restatement (Second) of Torts §496G, cmt. c).

As the Pennsylvania Supreme Court has noted, a court must find as a matter of law that a plaintiff has assumed the risk in order to grant summary judgment:

> [T]o grant summary judgment on the basis of assumption of the risk it must first be concluded, as a matter of law, that the party consciously appreciated the risk that attended a certain endeavor, assumed the risk of injury by engaging in the endeavor despite the appreciation of the risk involved, and that the injury sustained was, in fact, the same risk of injury that was appreciated and assumed.

*Longwell v. Giordano*, 57 A.3d 163, 169 (Pa. 2012) (quoting *Bullman v. Giuntoli*, 761 A.2d 566, 573 (Pa. Super. 2000)).

The question of assumption of the risk typically remains for the jury, and it is only where the evidence reveals a scenario so clear as to void all questions of material fact concerning the plaintiff's own conduct that the court can enter summary judgment. *Thompson v. Ginkel*, 95 A.3d 900, 907 (Pa. 2014) (citing *Montagazzi v. Crisci*, 994 A.2d 626, 636 (Pa. Super. 2010)). Assumption of the risk requires a factual analysis of the plaintiff's subjective understanding of the risks involved. *Sansom v. Crown Equip. Corp.*, 880 F. Supp. 2d 648, 666 (W.D. Pa. 2012) (citing *Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1044 (3d Cir. 1997)). "To avoid liability based on assumption of the risk on either a strict liability or negligence claim, a defendant must 'produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it.'" *Blake v. Greyhound Lines, Inc.*, 448 F. Supp. 2d 635, 642 (E.D. Pa. 2006) (quoting *Robinson v. B.F. Goodrich Tire Co.*, 664 A.2d 616 (Pa. Super. Ct. 1995)).

The court may itself determine the issue only where reasonable men could not differ as to the conclusion. *Surace*, 111 F.3d at 1054 (quoting *Mucowski v. Clark*, 590 A.2d 348, 350 (Pa. Super. 1991)). To infer assumption of the risk from the plaintiff's conduct, the conduct must be such as fairly to indicate that the plaintiff was willing to take his chances. *Id.* (quoting *Wagner v. Firestone Tire & Rubber Co.*, 890 F.2d 652, 657 (3d Cir. 1989)).

In the case at hand, the Court must consider whether Plaintiff fully understood the specific risk involved in trying to remove an allegedly flapping piece of plastic from the roller, and yet voluntarily chose to encounter it. The evidence on the issue of assumption of risk is insufficient to establish as a matter of law that Plaintiff knowingly assumed the risk of injury when she reached towards the roller to remove the flapping piece of plastic.

Plaintiff testified during her deposition that she did not even think about reaching for the piece of plastic and that it was simply a "knee-jerk" reaction to remove it. (ECF No. 59 at 22). Plaintiff also testified that she was not aware of the "specific risks" of reaching for the plastic because she believed there was no danger in doing so and it was common practice for CVS employees to grab a piece of dangling trash from the conveyor. (*Id*.). Defendants assert that Plaintiff was aware of the risk because she knew the conveyor was on and knew that she should keep her hands away from a moving conveyor, which did not have a physical guard on it. (ECF No. 64 at 12). The Court finds this to be a question of fact that should be determined by the factfinder. The factfinder must also determine whether Plaintiff was correct in asserting that CVS employees routinely grabbed pieces of dangling trash from the conveyor. This information will help determine whether or not Plaintiff knew that she was assuming a risk in trying to remove the piece of plastic, or whether she was doing something she believed to be safe and routine.

A further dispute of material fact is whether Plaintiff in fact reached into the conveyor to remove the piece of plastic or whether she simply tried to remove a piece of plastic that was flapping around outside. Defendants assert that the position of the plastic was such that Plaintiff had to reach into the conveyor to remove it. (ECF No. 64 at 14). The Court is unable to determine the manner in which Plaintiff reached into the conveyor based on the evidence presented. This factual determination must be made by the jury, and will inform the question whether Plaintiff believed she was assuming a risk in trying to remove the piece of plastic.

Defendants claim that Plaintiff allegedly ignored the training she had received prior to starting her work at CVS. (*Id.* at 13). Plaintiff received training prior to starting employment in 2006 and again in 2010. The Court finds that it is a question for the jury to determine whether Plaintiff had in fact been warned of the risk of engaging in the conduct she engaged in, and whether she voluntarily proceeded in the face of such a risk. Since there is a dispute of fact surrounding the manner in which Plaintiff attempted to remove the piece of plastic, the issue whether Plaintiff engaged in conduct she had been trained not to do is also colored by that factual determination and should therefore be left to the jury.

Plaintiff also noted that split-case pickers were to perform cleaning of their work areas. (ECF No. 59 at 8). Defendants deny that cleaning a powered roller while it was operating fell within the purview of these duties. (ECF No. 64 at 14). The determination of this issue hinges on the factual question of how Plaintiff sought to remove the piece of plastic from her work area that was purportedly bothering her and impeding her work. Thus, the Court cannot find as a matter of law that the conduct Plaintiff engaged in was not within the purview of her work duties and that she assumed the risk of injury in engaging in such conduct. For all of the foregoing reasons, the defense of assumption of risk is unavailing to Defendants at this stage because genuine disputes of material fact remain.

### ii. Unforeseeable product misuse

Defendants raise unforeseeable product misuse as a further defense to Plaintiff's claim. (ECF No. 6 at 11). In addition to arguing the physical impossibility of a piece of plastic loosely dangling without being wrapped around the roller, Defendants assert that even if the plastic were loosely dangling, Plaintiff's conduct in reaching under a powered moving conveyor to remove it was unforeseeable. (*Id.* at 15–16).

Product misuse involves "a plaintiff's unforeseeable, outrageous, and extraordinary use of a product. . . [T]o misuse a product in an 'unforeseeable and outrageous' fashion is to conduct oneself in a highly reckless manner." *Reott*, 55 A.3d at 1097.

Based on the facts presented, the Court is unable to find as a matter of law that Plaintiff's reaching under the trash conveyor was "unforeseeable and outrageous" conduct. Plaintiff states that split-case pickers routinely placed totes onto the powered accumulator conveyor directly beneath the trash conveyor and Dematic was likely aware they did this. (ECF No. 59 at 30). The factfinder must determine whether such a removal of trash was in fact routine practice among CVS employees. In addition, the factfinder must determine whether or not Plaintiff's job duties required her to work within close proximity of the moving conveyor.

Defendants have failed to satisfy the Court as a matter of law that Plaintiff's conduct in removing the piece of plastic was "unforeseeable and outrageous." Genuine disputes of material fact remain regarding Plaintiff's conduct that must be resolved by the

factfinder at trial. The Court therefore finds that the defense of unforeseeable product misuse is unavailing to Defendants at the summary judgment stage.

### c. Failure to warn (Count II)

#### i. Open and obvious danger

Count II of Plaintiff's complaint claims that Defendants failed to provide Plaintiff with adequate warnings regarding the trash conveyor. (ECF No. 1-2 at 11). Plaintiff argues that the risk was not open and obvious, and that the lack of warnings proximately caused her injuries. (ECF No. 59 at 25).

Under Pennsylvania law, if a product is defective due to lack of adequate warnings about the product's safe use, and the defect is a proximate cause of the plaintiff's injury, the manufacturer is strictly liable. *Spowal v. ITW Food Equip. Grp. LLC*, 943 F. Supp. 2d 550, 559 (W.D. Pa. 2013), citing *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 119 (3d Cir.1992). However, there is no duty to warn where the danger is open and obvious. *Id.* Whether or not a danger is open and obvious is an objective inquiry, which is not dependent upon the actual knowledge of the product's user or his actual awareness of the danger. *Bowersfield v. Suzuki Motor Corp.*, 111 F. Supp. 2d 612, 622 (E.D. Pa. 2000) (citing *Sherk v. Daisy Heddon*, 427 A.2d 657, 661 (1981), *reversed on other grounds*, 498 Pa. 594, 450 A.2d 615 (1982)). According to the Restatement (Second) of Torts, "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the

community as to its characteristics." Restatement (Second) of Torts § 402A, comment (i) (1965).

Plaintiff asserts that the danger was not open and obvious, but was concealed and not readily apparent to the user. (ECF No. 59 at 27). She argues that because of her height, she saw only the dangling plastic and conveyor frame, but not the nip-point. (*Id.* at 33). Though she was at eye level with the conveyor, Plaintiff asserts that the ordinary customer would have been taller and hence would not have seen the nip-point. (*Id.* at 33). In addition, Plaintiff argues that it was clearly foreseeable that the ordinary customer would be reaching under the trash conveyor and was in fact required to do so during the course of their job. (*Id.*). Plaintiff also refers to Dematic's own design schematics for this model conveyor to show that Dematic recognized this dangerous nip-point and added warning stickers to this area to advise users of the nip-point. (*Id.* at 28, citing Dematic Schematics A83-184).

Defendants deny that Plaintiff's conduct was foreseeable. (ECF No. 64 at 16). They also assert that "the fact that Defendants added warnings to the conveyor model during subsequent reconfigurations does not establish that the risk of reaching into the conveyor structure was not open and obvious." (ECF No. 64 at 17). Thus, Defendants argue that the Court should find the conveyor to have been an open and obvious danger. (ECF No. 55 at 7). Defendants have referred the Court to a number of cases in which a moving conveyor was held to be an open and obvious risk. (*Id.* at 22). However, contrary to Defendants' assertion, the Court finds that the question is not whether or not the conveyor was an

open and obvious danger, but rather whether the unguarded nip-point was an open and obvious danger.

Considering the facts in the light most favorable to Plaintiff, the Court finds that a jury could reasonably conclude that the danger of the unguarded nip-point was not open and obvious to the ordinary consumer. (ECF No. 59 at 33). As Plaintiff notes, she was somewhat shorter than the ordinary consumer. Despite her shorter stature, she claims to have been unable to see the nip-point under the conveyor. These issues are questions of fact that must be determined by the factfinder at trial.

### ii. Heeding presumption

Defendants argue that there is no evidence from which a reasonable jury could conclude that additional warnings would have caused her to act differently. (ECF No. 64 at 17). The Third Circuit has noted that Comment j to § 402A of the Second Restatement provides that "[w]here a warning is given, the seller may reasonably assume that it will be read and heeded." *Pavlik v. Lane Ltd./Tobacco Exporters Int'l*, 135 F.3d 876, 883 (3d Cir. 1998). Comment j thus sets forth a presumption that works in favor of the manufacturer or seller of a product where an adequate warning has been provided. *Id.* According to the Third Circuit, it follows logically therefrom "that the law should also presume that, when no warning or an inadequate warning is provided, the end-user would have read and heeded an adequate warning had one been given by the manufacturer." *Id.* (citing *Coffman v. Keene Corp.*, 608 A.2d 416, 421 (1992)). The Third Circuit predicted that Pennsylvania would agree that "[c]omment j provides ample support for application of

the rebuttable 'heeding' presumption ... to assist a plaintiff in proving the absence of a warning proximately caused harm." *Id.* (citing *Coffman,* 608 A.2d at 422).

In *Colegrove v. Cameron Machine Co.* this District noted that the heeding presumption is crucial in cases where the plaintiff was exposed to a defective product in the course of his employment under circumstances that provided no meaningful choice of whether to avoid the product. *Colegrove v. Cameron Mach. Co.,* 172 F. Supp. 2d 611, 619 (W.D. Pa. 2001). The court noted that in such cases the plaintiff employee would usually need to rely on the heeding presumption in order to get to a jury. *Id.*

The Court is unable to determine as a matter of law whether or not Defendants adequately warned Plaintiff of the dangers involved in trying to remove a piece of plastic from the conveyor. The jury must determine whether or not Defendants' warnings were adequate and whether or not Plaintiff would have heeded adequate warnings.

### d. Plaintiff's negligence claim (Count III)

Defendants assert that Plaintiff's negligence claim fails because Plaintiff cannot establish that her injuries were caused by a design defect in the trash conveyor or by inadequate warnings. (ECF No. 64 at 10). In Pennsylvania, a Plaintiff suing in negligence must prove causation, i.e. the requisite causal connection between the defendant's wrongful act and his injuries. *Reott,* 55 A.3d at 1103.

The Court finds that summary judgment shall be denied here for the same reason that summary judgment was denied above. A genuine dispute of material fact remains regarding whether Plaintiff's conduct and whether her injuries were caused by a design

defect in the trash conveyor or inadequate warnings. For the reasons outlined above, these factual determinations must be left to the factfinder at trial.

### e. The Statute of Repose

Defendants assert that Plaintiff has failed to show that a genuine issue of material fact exists as to whether twelve years have elapsed since the construction of the trash conveyor, and that Plaintiff's claims are therefore barred by the Pennsylvania Statute of Repose. (ECF No. 64 at 18).

The Pennsylvania Statute of Repose provides in pertinent part:

[A] civil action or proceeding brought against any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property must be commenced within 12 years after completion of construction of such improvement to recover damages for:
(1) Any deficiency in the design, planning, supervision or observation of construction or construction of the improvement.
. . .
(3) Injury to the person or for wrongful death arising out of any such deficiency.
. . .

42 Pa. Cons. Stat. § 5536(a). A statute of repose operates as substantive law by extinguishing a cause of action outright and precluding its revival. *Graver v. Foster Wheeler Corp.*, 96 A. 3d 383, 387 (Pa. Super. 2014); *Luzadder v. Despatch Oven Co.*, 834 F. 2d 355, 358 (3d Cir. 1987). Three elements must be satisfied by a party moving for protection under the statute of repose: "(1) what is supplied is an improvement to real property; (2) more than twelve years have elapsed between the completion of the improvements to the real estate and the injury; and (3) the activity of the moving party must be within the class

which is protected by the statute." *Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 84 (Pa. 1994) (citations omitted). The Court will address each of these three elements individually below.

### i. Improvement to real property

"What constitutes an improvement to real estate is a determination which must be made on a case-by-case basis." *Christ v. Prater Indus., Inc.*, 67 F. Supp. 2d 491, 494 (E.D. Pa. 1999) (citing *In re Barto Technical Services, Inc.*, 181 B.R. 246, 249 (Bankr. W. D. Pa.1995)). The Pennsylvania Supreme Court has defined "improvement" as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes." *Fleck*, 981 F.2d at 114 (quoting *McCormick v. Columbus Conveyer Co.*, 564 A.2d 909 (Pa. 1989)).

> An improvement includes everything that permanently enhances the value of real property. Commonly, improvements include: erection of a building; replacing old buildings with new ones; substantial repairs to a building necessary to preserve a building; the making of substantial additions to or changes in existing buildings; construction of sidewalks; erection of fences; and the preparation of land for building sites.

*Noll*, 643 A. 2d at 87 (internal citations omitted).

Furthermore, a fixture is by definition an improvement to real property. *Id*. The test used in determining when an article of personalty is a fixture has three components: (1) the relative permanence of attachment to realty; (2) the extent to which the chattel is necessary or essential to the use of the realty; and (3) the intention of the parties to make a permanent addition to the realty. *Id*. The court must look to the objective intention of the

parties, as evidenced by the proven facts and circumstances surrounding the case, to determine whether an object has become a fixture for purposes of § 5536. *Id*. The following considerations may be taken into account in determining whether an object has become a fixture for the purposes of § 5536:

> [T]he degree to which and manner in which the object is attached to real property, the ease of removing the object, whether the object may be removed without damaging the real property, how long the object has been attached to the real property, whether the object is necessary or essential to the real property, and the conduct of the party and whether it evidences an intent to permanently attach the object to the realty . . .

*Id*. at 88.

The statute of repose was held not to apply to a conveyor where the conveyor was found not to be incorporated into the construction of the building. *Tropello v. Mathews Conveyor Co.*, 1994 WL 161380, at *4 (E.D. Pa. Apr. 29, 1994). Since the conveyor could be easily removed and reinstalled at one of the company's other plants, the court held in *Tropello* that the conveyor was not "uniquely suited" to its present location, and that the statute of repose therefore did not bar plaintiffs' claims. *Id*. In contrast, a belt conveyor was considered an improvement to real property for purposes of the statute where it was "integrated into the construction of the new power plant that was uniquely suited to that site." *McCormick*, 564 A.2d at 910.

In *Fisher v. Rapistan Demag Corp.* a conveyor was considered to be an improvement to real property based on the difficulty of removing the conveyor and the material loss to the value property that would be caused by removing it. *Fisher v. Rapistan Demag Corp.*, 1997 WL 587373, at *2 (E.D. Pa. Sept. 12, 1997) *aff'd*, 156 F.3d 1224 (3d Cir. 1998). The court

also considered the fact that the conveyor was installed in 1959, while the building was being constructed, and had never been moved or removed, as well as the fact that the conveyor was the only practical means of moving merchandise from the trucks to the sales floor. *Id.* at *3. Finally, the court found that the parties intended the conveyor to be a permanent fixture because it could not be disassembled by a layperson, removal would cause damage to the structure, it was added to the original structure in order to make the realty suitable for a retail establishment, and was so large that all repairs had to be done on site. *Id.*

Whether a particular piece of equipment is an improvement to real property is a question of law. *Christ v. Prater Indus., Inc.*, 67 F. Supp. 2d 491, 494 (E.D. Pa. 1999), citing *Lejeune v. Bliss–Salem, Inc.*, 1995 WL 491253 at *5 (E.D.Pa.1995). However, a grant of summary judgment is inappropriate where a genuine dispute of material fact exists. *See McConnaughey v. Bldg. Components, Inc.*, 637 A.2d 1331, 1335 (Pa. 1994) (finding that a genuine issue of material fact existed as to manufacturer's involvement in planning, design or construction of a barn).

Applying the factors considered in the above cases to the present case, the Court finds that Plaintiff has raised genuine disputes of material fact regarding the conveyor's status within the facility. Plaintiff states that the conveyor system was affixed to the ceiling, though it was initially attached to the floor (ECF No. 59 at 38), suggesting at least some mobility of the conveyor. Defendant notes that the trash conveyor system is 146 feet long and weighs approximately 17 tons. (ECF No. 55 at 28). The parties are in disagreement over the number of days it would take to disassemble the conveyor. While

Plaintiff asserts that the conveyor could be disassembled within a day (ECF No. 59 at 16), Defendants claim that disassembly would take a number of weeks. (ECF No. 55 at 28). The Court finds that the ease of removing the conveyor and the length of time it would take to do so present a dispute of material fact that must be resolved by the factfinder at trial.

Defendants assert that even if removal did not harm the structure of the facility, it would still cause a "material loss in value" as the building would be far less suited to be a distribution facility without the conveyor. (*Id.* at 29). Plaintiff notes that one split-case picking line was operating without a trash conveyor system in 2010. (ECF No. 59 at 16). Though the building has been used as a distribution facility since its inception, the Court finds that it is a factual question for the jury to determine whether the building could be put to some other use, and hence whether removal of the conveyor would cause a "material loss in value" of the building.

Finally, the Court must consider the conduct of the parties and whether it evidenced an intent to permanently attach the object to the realty. The inquiry is an objective one. As noted above, Plaintiff presented evidence that the conveyor had originally been attached to the ground, but was now attached to the ceiling. (ECF No. 59 at 38). In addition, Plaintiff presented evidence of other changes that had been made to the conveyor. (*Id.* at 38–39). The factfinder must make a factual determination regarding the changes allegedly made to the conveyor since its installation. This determination will inform the objective inquiry whether the conveyor was intended to be permanently attached to the property.

The Court is unable to determine the difficulty of removing the trash conveyor in this case, or whether removal would cause a material loss in value of the property. The Court finds that in light of the genuine disputes of material fact in this case, the jury must make factual determinations regarding the ease of removal of the trash conveyor, and whether or not it added value to the property. The factual determinations regarding the modifications allegedly made to the trash conveyor are necessary in order to determine the parties' objective intent in installing the conveyor.

### ii. The 12-year period

Under the statute of repose, an action to recover damages "must be commenced within 12 years after completion of construction" of an improvement to real property. 42 Pa. Cons. Stat. § 5536. Thus, the statute "bars claims filed 12 years after the completion of an improvement to real property." *Graver*, 96 A. 3d at 387 (explaining that statutes of repose begin to run upon the "completion of certain conduct by a defendant," rather than when a cause of action accrues as with a statute of limitations). Specifically, the twelve year period begins to run "when the entire construction project is so completed that it can be used by the general public." *Noll by Noll*, 643 A. 2d at 84.

The trash conveyor in this case was designed, manufactured, and installed in 1969. (ECF No. 55 at 26). Plaintiff argues that despite this lapse of time, there are multiple issues of fact surrounding when Defendants made changes to the trash conveyor within the 12 years preceding the accident, which would serve to reset the 12 year time period. (ECF No. 59 at 38). Plaintiff states that Dematic's failure to inspect the equipment and

subsequent moving of the trash conveyor from the floor to the ceiling, lengthening of the conveyor line, and work on or near the trash conveyor present genuine factual issues that must be resolved through experts and CVS employees. (*Id.* at 32–34). Defendants counter that the fact that non-structural modifications were made on or around the trash conveyor does not affect the 12-year time period. (ECF No. 64 at 19).

According to Plaintiff, CVS testified that they relied on Dematic to provide properly guarded equipment and Dematic promised (in 1999) to inspect the equipment for the deficiencies at the conclusion of the projects. (ECF No. 59 at 38). An ongoing arrangement to service and maintain an improvement does not extend the time in which suit can be maintained. *Facenda v. Applied Power, Inc.*, 1987 WL 14151, at *3 (E.D. Pa. July 17, 1987). In *Fetterhof v. Fetterhof* the Pennsylvania Superior Court held that the arrangements to periodically service the improvement could not be enlarged to extending the design and construction period over thirty years. *Fetterhoff v. Fetterhoff*, 444, 512 A.2d 30, 33 (Pa. Super. 1986). The date of delivery of the improvement to appellants was held to fix the date actuating the statute of repose, despite periodic maintenance thereafter. *Id.* Thus, the mere fact that Dematic promised to inspect the equipment for deficiencies does not reset the 12-year statute of repose period in this case.

In *Fleck* the Third Circuit found that an above-ground swimming pool was an improvement to real property, based on the fact that the parties intended to annex the pool as a part of the real property. *Fleck*, 981 F.2d at 115. The court noted that the defendant had since built an elaborate, three-tiered deck around the pool. *Id.*

The Court finds that while the trash conveyor was installed more than twelve years ago, the disputes of fact surrounding subsequent improvements to the conveyor should be resolved by the factfinder at trial. The evidence presented by Plaintiff suggests that the changes amounted to more than mere non-structural modifications of the type identified in *Fleck*. The factfinder should determine the nature of these modifications and their effect on the status of the conveyor within the property. As noted above, the statute of repose bars claims filed 12 years after completion of an improvement to real property. *Graver*, 96 A. 3d at 387. Since the Court has identified genuine disputes of material fact regarding the applicability of the statute of repose, the Court finds that the factual issues identified above must be determined by the factfinder at trial.

### iii. The class of people protected by the statute

The statute applies to "any person lawfully performing or furnishing the design, planning, supervision or observation of construction, or construction of any improvement to real property." 42 Pa. Cons. Stat. § 5536. In determining whether an entity is within the class of persons protected by the statute, the Court must focus its inquiry "on the activity performed, particularly whether any 'individual expertise' has been supplied." *Noll*, 643 A. 2d at 86 (citing *McConnaughey*, 637 A. 2d at 1334). "The Pennsylvania statute identifies its class not by the status or occupation of its members but rather by the contribution or acts done in relation to the improvement to the real property." *McCormick*, 564 A. 2d at 910 (quoting *Leach v. Philadelphia Sav. Fund Soc.*, 340 A. 2d 491, 493 (1975)). The statute applies "only to the kinds of economic actors who perform acts of

'individual expertise' akin to those commonly thought to be performed by builders."
*McConnaughey*, 637 A. 2d at 1334.

Defendants are members of the class protected by the statute since they designed and manufactured the trash conveyor and/or are successors to the company responsible for designing and manufacturing the trash conveyor. (ECF No. 56 at ¶ 8).  However, for the reasons discussed above, the Court finds that there are genuine disputes of material fact regarding the applicability of the statute of repose that must be determined by the factfinder at trial. The factfinder must also determine when and whether the 12-year period began to run for purposes of the statute.

### VI. Conclusion

The Court finds that Defendants' motion for summary judgment shall be denied. The parties have raised genuine disputes of material fact that must be determined by the factfinder at trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **BRANDI L. MCKENZIE** | ) |
| **Plaintiff,** | ) |
| | )     **CIVIL ACTION NO. 3:12-250** |
| | ) |
| **v.** | )     **JUDGE KIM R. GIBSON** |
| | ) |
| **DEMATIC CORP., et al.,** | ) |
| **Defendants.** | ) |

## ORDER OF COURT

AND NOW, this 18th day of June, 2015, upon consideration of Defendants'

motion for summary judgment (ECF No. 54), it is **HEREBY ORDERED** that the motion is

**DENIED.**

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE

25