# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDI L. MCKENZIE, | ) | |
| | ) | CIVIL ACTION NO. 3:12-250 |
| Plaintiff, | ) | |
| | ) | JUDGE KIM R. GIBSON |
| v. | ) | |
| | ) | |
| DEMATIC CORP., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

## I.  Introduction

Before the Court is Defendants' Motion to Exclude, in Part, the Testimony of Roelof H. deVries. (ECF No. 84.)  The parties submitted briefing on the issue (ECF Nos. 85, 94, 101, 103), and the Court held a *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)/Rule 702 hearing on February 5, 2016.  For the reasons that follow, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion. (ECF No. 84.)

## II.  Background

The facts of this case have been set out at length in the Memorandum Opinion and Order of Court upon Defendants' Motion for Summary Judgment (ECF No. 71.) Therefore, only those facts relevant to the instant motion are included here.

On November 6, 2012, Plaintiff filed a civil complaint in the Court of Common Pleas of Somerset County, Pennsylvania, alleging claims for defective design, failure to warn, and negligence, for injuries sustained while performing work duties for CVS/Caremark Corporation

(**CVS**). (ECF No. 1-2.) Defendants properly removed the action to this Court on December 6, 2012. (ECF No. 1.)

Plaintiff was injured while working as a split-case picker at a CVS distribution facility in Somerset, Pennsylvania in 2010. Plaintiff reached her hand inside the structure of a powered, moving empty-carton conveyor (the "**trash conveyor**" or "**conveyor**") manufactured by Defendants. Plaintiff asserts that she reached her hand into the trash conveyor for the purpose of removing a thin piece of plastic from the roller. Among the defenses raised by Defendants is that Plaintiff's claims are barred by the Pennsylvania Statute of Repose related to improvements to real property. *See* 42 Pa. C.S.A. § 5536.

In support of her claims, Plaintiff submitted an expert report by Roelof H. deVries that addresses four issues: (1) whether the trash conveyor was defective; (2) whether the alleged defect rendered the conveyor unreasonably dangerous; (3) whether the conveyor is integral to the warehouse building; and (4) whether the alleged defect caused Plaintiff's injuries. (ECF No. 85-1.) Defendants move to exclude Professor deVries's testimony as to issues three and four: whether the conveyor is integral to the warehouse building and whether the alleged defect caused Plaintiff's injuries. (ECF No. 84.)

## III.    Discussion

On October 10, 2015, Defendants filed the instant motion (ECF No. 84), seeking an order to exclude, in part, the testimony of Plaintiff's mechanical engineering expert, Roelof H. deVries. Specifically, Defendants move this Court for an order excluding the testimony of Professor deVries regarding whether (1) the trash conveyor was "integral" to the CVS facility in which

Plaintiff was injured, and (2) the alleged design defect in the trash conveyor caused Plaintiff's injury. (ECF No. 84, 85 at 1.) Defendants advance three arguments in support of the motion to exclude Professor deVries's testimony in part. First, Defendants argue that Professor deVries is not qualified to render an expert opinion that the trash conveyor was not integral to the CVS facility. (ECF No. 85 at 7-9.) Second, Defendants argue that Professor deVries's opinion that the trash conveyor was not integral to the CVS facility fails the reliability requirement of Rule 702. (ECF No. 85 at 9-16.) Third, Defendants argue that the Court should exclude as unreliable Professor deVries's testimony that the alleged design defect in the trash conveyor caused Plaintiff's injury. (ECF No. 85 at 16-19.)

A.      **Rule 702 Admissibility**

Rule 702 provides that an expert witness may be permitted to testify regarding "scientific, technical, or other specialized knowledge" if it will "help the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. For expert testimony to be admissible, three additional requirements must be satisfied: (1) the testimony must be "based upon sufficient facts or data," (2) the testimony must be "the product of reliable principles and methods," and (3) the expert witness must have "reliably applied the principles and methods to the facts of the case." *Id.* The Third Circuit has interpreted these requirements to mean that the Court is obligated to consider a "trilogy of restrictions" before admitting expert testimony: qualification, reliability, and fit. *Schneider ex rel. Estate of Schneider v. Fried,* 320 F. 3d 396, 404 (3d Cir. 2003). The Third Circuit has elaborated as follows:

> Qualification refers to the requirement that the witness possess specialized expertise. . . . Secondly, the testimony must be reliable; it must be based on the

methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his or her belief. . . . Finally, Rule 702 requires that the expert testimony must fit the issues in the case. In other words, the expert's testimony must be relevant[.]

*Id.* (internal citations and quotations omitted). Defendants do not challenge the "fit" of Professor deVries's testimony. Rather, as noted above, Defendants assert that Professor deVries is not qualified to render expert opinions on portions of his proposed testimony, and that portions of Professor deVries's proposed testimony fail the reliability requirement.

The party offering the expert testimony must prove the Rule 702 requirements by a preponderance of the evidence. *In re TMI Litig.*, 193 F. 3d 613, 663 (3d Cir. 1999). The trial judge serves as a "gatekeeper" in determining the admissibility of proposed expert testimony. *United States v. Schiff*, 602 F. 3d 152, 172 (3d Cir. 2010); *Encore Med., L.P. v. Kennedy*, No. 3:12-CV-58, 2013 U.S. Dist. LEXIS 188553, at *4 (W.D. Pa. Dec. 30, 2013).

## B. Qualification

To qualify as an expert, "Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony." *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 335 (3d Cir. 2002) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). The Third Circuit has interpreted this first requirement liberally, declining to insist that experts possess "a certain kind of degree or background." *In re Paoili R. Yard PCB Litig.*, 916 F.2d 829, 855 (3d Cir. 1990). "'The language of Rule 702 and the accompanying advisory committee notes make clear that various kinds of 'knowledge, skill, experience, training, or education,' qualify an expert as such.'" *Wolfe v. McNeil-PPC, Inc.*, 881 F.Supp.2d 650, 654 (E.D. Pa. 2012) (quoting *Paoli*, 916 F.2d at 855 (quoting FED. R. EVID. 702)).

One of the conclusions included in Professor deVries's expert report is that "[t]he trash conveyor is not integral to the CVS warehouse building." (ECF No. 85-1 at 65.) Defendants assert that Professor deVries, as a mechanical engineer, is not qualified to render an expert opinion that the trash conveyor is "not integral" to the CVS facility.[1] (ECF No. 85 at 7-9.) In support of this position, Defendants note that Professor deVries's background is primarily in agricultural engineering and that he is not a structural engineer or an architect. (*Id.* at 8.) Moreover, Defendants state that Professor deVries (1) has never been involved in the construction of a warehouse, (2) has never designed a distribution warehouse, and (3) has never seen a conveyor of the type at issue in this case installed or removed from a building or been engaged to provide an opinion as to whether any piece of equipment was integral to a building. (*Id.*) Based on Mr. deVries's background, Defendants argue that he "has stepped well outside his field of expertise," and that his testimony should therefore be excluded on this issue. (*Id.*)

In response, Plaintiff states that Professor deVries's education and experience, including work history related to conveyor systems satisfy the qualification requirement of Rule 702. (ECF No. 94 at 9-11.)

The Court finds that Professor deVries is qualified to testify as to whether the conveyor was integral to the CVS facility. Professor deVries has a Bachelor of Science degree in Mechanical Engineering from Lafayette College. (ECF No. 85-1 at 74.) He also holds a master's degree in Agricultural Engineering, with a concentration in Power and Machinery and a minor

---

[1] Defendants also challenge this testimony on the basis of its reliability, which the Court will address in detail below. This section focuses solely on the qualification requirement.

in Mechanical Engineering from Cornell University. (*Id*.) Professor deVries is published in his field and holds seven patents. (*Id*.)

Professor deVries's work history spans more than 26 years and includes a significant amount of work both on conveyor systems and as an engineer relating to manufacturing at six different companies. (*Id*.) He has held positions as a design engineer and engineering manager, and has worked with conveyor systems in many of these positions, including when he was a design engineer at the Campbell Soup company and at Ford New Holland, and when he was an Engineering Manager at Steiner Turf Equipment, Tekfor USA, and at J&J Truck Bodies and Trailors. (*Id*.) Moreover, Professor deVries has served as the Principal at deVries Engineering, where he worked on a project design involving the use of a belt conveyor, and currently serves as an Assistant Professor at the University of Pittsburgh at Johnstown, where he teaches a course in Advanced Machine Design that includes an optional section on conveyors. (*Id*.)

Professor deVries's work history and education establish that he is qualified to render an opinion as to whether the trash conveyor is integral to the CVS facility. The Court declines to adopt the limited construction of the qualification requirement that Defendants propose, and finds that the cases cited by Defendants in their brief in support of this strict construction are inapposite. The Defendants are correct that Rule 702 requires that the Court "exclude proffered expert testimony if the subject of the testimony lies outside the witness's area of expertise." (ECF No. 85 at 9 (citing *In re Diet Drugs Prods. Liab. Litig.*, 2001 U.S. Dist. LEXIS 1174, at \*21-22 (E.D Pa. Feb. 1, 2001)). The cases Defendants cite to illustrate this point, however, include instances where the margin between the specific expertise of the proffered expert and the

subject matter on which he or she planned to opine was great. (*See* ECF No. 85 at 8-9 (citing

*Calhoun v. Yamaha Motor Corp., U.S.A.*, 350 F.3d 316, 323 (3d Cir. 2003) (affirming district court's

holding that an expert specializing in psychology and human factors engineering could not

offer testimony on the proper age for jet ski use); *Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1055-56

(3d Cir. 1997) (affirming district court's holding that electrical engineer was not qualified to

testify about a theory of liability that "hinged on habituation," an area in which the proffered

expert had no training or experience related to habituation, had not read relevant literature on

the phenomenon, and, when questioned about the specifics of habituation, admitted that he

relied on another individual as the sole basis for his conclusions and replied that he would "let

[him] be the expert on this.")).

These cases do not govern the outcome of the pending motion. Unlike the cases cited by

Defendants, Professor deVries has both training and work experience that relate to the design of

conveyor systems, and he seeks to testify about the relationship between a conveyor system and

a building. The Court finds that Professor deVries's training and experience are sufficient to

inform his opinion on this issue and to satisfy the qualification requirement of Rule 702. The

Court therefore denies Defendants' motion as to this issue and holds that Professor deVries is

qualified to render an opinion on whether the conveyor was integral to the CVS facility. *See, e.g.,*

*Knight v. Otis Elevator Co.*, 596 F.2d 84 (3d Cir. 1979) (permitting expert testimony that

unguarded elevator buttons constituted a design defect even though the expert lacked a specific

background in the design and manufacture of elevators); *Hammond v. International Harvester Co.,*

691 F.2d 646 (3d Cir. 1982) (permitting expert testimony by an engineer in a products liability

action involving tractors even though he lacked a specific background in the design and manufacture of tractors); *Habecker v. Copperloy Corp.*, 893 F.2d 49 (3d Cir. 1990) (permitting a safety specialist with advanced degrees in safety education, human factors, and product safety design to testify as to whether the failure of a forklift manufacturer to put seatbelts in a forklift caused the death of the operator when the forklift overturned, even though the expert was not an engineer).

C.    Reliability

Defendants argue that two portions of Professor deVries's proffered testimony fail to satisfy Rule 702's reliability prong. Rule 702 requires that the expert testify to "scientific, technical or other specialized knowledge [that] will assist the trier of fact." FED.R.EVID. 702. Under this requirement, "an expert's testimony is admissible so long as the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. The Supreme Court has explained that this part of Rule 702 requires a determination as to the scientific validity of proffered evidence that must be "based on the methods and procedures of science rather than on subjective belief or unsupported speculation." *Id.* (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 289-90 (1993) (internal quotations omitted)).

*Daubert* suggests factors, not intended to be a "definitive checklist," that the district court may consider when evaluating whether a particular scientific methodology is reliable. *Daubert*, 509 U.S. at 591-92. These factors include (1) the testability of the expert's hypothesis, (2) whether the methodology has been subjected to peer review and publication, (3) the frequency by which the methodology leads to erroneous results, (4) the existence and maintenance of

standards controlling the technique's operation, and (5) whether the methodology has been generally accepted in the scientific community. *Id*.

"The evidentiary requirement of reliability is lower than the merits standard of correctness." *In re Paoli*, 35 F.3d at 744. Accordingly, the district judge should find expert opinion to satisfy the reliability requirement if it is based on "good grounds," even if the judge thinks that the opinion is incorrect. *Id*. "The focus…must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. "The ultimate touchstone is helpfulness to the trier of fact, and with regard to reliability, helpfulness turns on whether the expert's technique or principle [is] sufficiently reliable so that it will aid the jury in reaching accurate results." *In re Paoli*, 35 F.3d at 744 (internal quotations and citations omitted).

      1.      **The Reliability of Professor deVries's Testimony as to Whether the Trash Conveyor Was Integral to the CVS Facility**

As discussed above, Professor deVries reached the conclusion that "[t]he trash conveyor is not integral to the CVS warehouse building." (ECF No. 85-1 at 65.) The Court has already determined that Professor deVries is qualified to render this opinion. The Court turns now to the question of whether Professor deVries's testimony as to whether the trash conveyor was integral to the CVS facility satisfies the reliability requirement of Rule 702.

In reaching the conclusion that the trash conveyor is not integral to the CVS facility, Professor deVries assessed eight inquiries relevant to the determination of whether an article of personalty is a fixture and is therefore an improvement to real property under the Pennsylvania Statute of Repose. (ECF No. 85-1 at 23-41.) *See Noll by Noll v. Harrisburg Area YMCA*, 643 A.2d 81, 88 (Pa. 1994). Defendants argue that four of these eight considerations constitute "predicate

opinions," each of which Defendants argue is unreliable under Rule 702. (ECF No. 85 at 9.) According to Defendants, these predicate opinions are: (1) the trash conveyor can be quickly and easily installed and/or removed without modifying or damaging the CVS facility; (2) the trash conveyor was, in fact, previously moved from one location to another; (3) the trash conveyor is not essential to the split-case picking operation; and (4) the trash conveyor does not add value to the CVS facility (*Id.*)

The Court addresses each of these arguments in turn below, and concludes that Professor deVries may properly testify as to the first two opinions (installation and removal of the trash conveyor and whether the trash conveyor had moved), but may not testify as to opinions three and four (the necessity and value of the trash conveyor). The Court notes, however, that the factors courts consider in determining whether an article of personalty is a fixture and therefore an improvement to real property with regard to the Pennsylvania Statute of Repose are non-exclusive and discretionary factors. *See Noll*, 643 A.2d at 87-89. Therefore, in addition to the six individual factors about which Professor deVries may opine (four factors that Defendants do not contest and two factors about which the Court concludes below that Professor deVries can testify), Professor deVries may also properly opine generally that the trash conveyor was not integral to the building.

### a.      Installation and Removal Process

Defendants argue that Professor deVries's opinion that the trash conveyor can be quickly and easily installed and removed is unreliable. (ECF No. 85 at 9-11.) In support of this argument, Defendants assert that "it is impossible to assess the complexity of an installation or

10

removal project without taking into account man hours," and note that Professor deVries only provided a man hours estimate after his deposition. (*Id.* at 9-10.) Defendants argue that the estimate Professor deVries ultimately did reach with regard to man hours is unreliable based on his methodology. (*Id.* at 10-11.) Lastly, Defendants assert that Professor deVries's reliance on installation schedules for other conveyors at the same CVS facility is improper because Professor deVries's admitted that he did not know the model of those conveyors during his deposition. (*Id.* at 11.)

Plaintiff argues that Professor deVries's opinion that the installation and removal of the trash line could be done quickly and easily relied on not only Professor deVries's knowledge of what it takes to install or remove this trash conveyor, but also on Dematic's own documents relative to the length of time that Dematic provided for the installation of this and other conveyors originally in the plant. (ECF No. 94 at 14-16.)

The Court finds that Professor deVries's proffered testimony as to the ease with which the conveyor can be installed and removed satisfies the reliability requirement of Rule 702. In his original expert report, Professor deVries opined that the removal of trash lines within the facility could be done quickly and easily based on his review of (1) the entirety of the project  of which the installation of this particular conveyor was a part, (2) the latest available version of the project schedule, (3) a comparison of that schedule to an earlier version of the schedule, which noted that it was "<u>imperative</u> that [the] <u>schedule</u> be followed and <u>accomplished on time</u>," and (4) a comparison of this project, where conveyors were being installed in an empty building, to subsequent projects done at the CVS facility, which had the complicating factor of

having to work around existing conveyors and requiring minimal interruption of the operation. (ECF No. 85-1 at 33.) Moreover, Professor deVries supplemented his expert report with an affidavit, wherein he calculated the time it would take to install and remove the trash conveyor based on assumptions including the length of the conveyor, the spacing of return rollers, walking speed, number of standard sections, and other factors. (deVries Aff. at A2.)

The Court finds that the above methods satisfy the evidentiary requirement of reliability. Focusing on the methodology used, the Court notes that Professor deVries's methods and hypotheses are testable and were explained both in the report and in the affidavit with reference to drawings, project schedules, and photographs. *See Daubert*, 509 U.S. at 591-92. While Defendants may disagree with Professor deVries's calculation of man hours and may question whether the project schedules on which Professor deVries relied in reaching his conclusions were the ones actually used in the project, these are not issues the Court must address at this stage. Rather, these questions are better raised through the cross-examination of Professor deVries at trial, or through Defendants' own expert testimony on the length of time installation and removal would take. *See Stecyk v. Bell Helicopter Textron, Inc.*, 295 F.3d 408, 414-15 (3d Cir. 2002) ("A party confronted with an adverse expert witness who has sufficient, though perhaps not overwhelming, facts and assumptions as the basis for his opinion can highlight those weaknesses through effective cross-examination") (citing *Daubert*, 509 U.S. 579 at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.")).

As the Third Circuit has explained, the question at this stage is not whether the expert methodology is without flaws: "[t]he grounds for the expert's opinion merely have to be good, they do not have to be perfect. The judge might think there are good grounds for an expert's conclusion even if the judge thinks that there are better grounds for some alternative conclusion." *Paoli*, 35 F.3d at 744. Noting that the touchstone of this inquiry is whether the proffered testimony will assist the trier of fact, the Court concludes that Professor deVries's opinion as to the installation and removal of the trash conveyor will indeed assist the trier of fact in understanding conveyors and the steps that generally go into their installation, the relevant drawings, and the project schedules in question. *See id*. at 745. The Court therefore holds that Professor deVries may testify as to the installation and removal process of the trash conveyor.

### b.      Movement of the Trash Conveyor

Defendants argue that Professor deVries should not be permitted to testify as to the movement of the trash conveyor for two main reasons. First, Defendants argue that no reasonable engineer would draw an opinion from preliminary design drawings, because, Defendants state, these drawings do not necessarily reflect the actual construction. (ECF No. 85 at 12.) Second, Defendants argue that Professor deVries relied on hearsay statements of two former CVS employees that are, "on their face…patently unreliable". (*Id*. at 13-14.)

Plaintiff argues that the requirements of Rules 702 and 703 are met because Professor deVries relied on Dematic's own records of the movement of the trash conveyor. (ECF No. 94 at 16.) With regard to the witness statements on which Professor deVries relied, Plaintiff argues

that Dematic inappropriately urges the Court to choose to rely on one witness statement over another. Moreover, Plaintiff argues that Defendants' arguments on this point do not provide a basis to exclude the testimony, but are rather issues of recollection and credibility about which the jury should make a determination at trial. (*Id.* at 17.)

The Court concludes that Professor deVries's proffered testimony as to the movement of the trash conveyor satisfies the reliability requirement of Rule 702. Professor deVries concluded that conveyors throughout the CVS facility were moved and changed. (ECF No. 85-1 at 28, 37.) Professor deVries based this conclusion on project drawings, from which he produced sketches illustrating how the building space had been reallocated for its various functions. (*Id.* at 37.) He also based his conclusion on the fact that the conveyor at one time rested on the floor before being reinstalled to hang from the free-standing mezzanine (*Id.* at 27-28), and on a comparison of design drawings, depicting where the conveyor would be installed. Based on this comparison, Professor deVries concluded that "the conveyor can be, and was, relocated within the existing building." (*Id.* at 28-29.) Defendants assert that this methodology is flawed, because it is possible that the first drawing, dated December 13, 1968, does not necessarily depict the position in which the conveyor was actually installed. As the Court noted above, however, the Court's role at this stage is not to determine whether Professor deVries's methodology is without flaws, nor is it to determine whether there is a better alternative method for determining whether the trash conveyor was moved. *See Paoli*, 35 f.3d at 744-46. Rather, the Court's role is to determine whether the opinion is based on "good grounds" and whether it will assist the trier of fact. *Id.*

14

Here, the Court determines that these considerations are satisfied. Professor deVries's testimony about the movement is based on a comparison of drawings of the conveyor installation that were provided by Defendants. Notwithstanding Defendants' conclusory statements as to whether a reasonable engineer would rely on such drawings, the Court finds no reason to believe that such a methodology is unreliable in violation of Rule 702, and Defendants point to no such reason. Indeed, the Court finds it quite reasonable that an engineer would rely on schematic layout plans provided by a company that owns and did work on the building, to determine where conveyors were located at different points in time. While it is certainly possible that the conveyor was not installed in the exact location in which it was depicted in the first drawing, documentation of such a possibility was not provided, and the Court finds it reasonable for Professor deVries to rely on the pre-installation drawing with which he was provided. Defendants will be able to challenge the accuracy of this drawing—and will be able to point out the possibility that the conveyor was not actually installed as drawn—during cross-examination. This process will properly leave the ultimate factual determination of whether the conveyor was in fact moved in the hands of the jury. *See Stecyk*, 295 F.3d at 414-15; *Gucker*, 2015 U.S. Dist. LEXIS 157901, at *6.

Moreover, the Court does not find that Professor deVries's reliance on the statements of two former longtime employees of the CVS facility, Herb Harman and Neil Adolfson, renders his testimony on this point unreliable. Leaving aside the issue of whether the statements of these former employees constitute hearsay, as an initial matter, an expert may, in most instances, rely on hearsay statements in forming his opinions, even if those hearsay statements

are not admissible at trial, so long the statements are of a kind normally relied on by experts in the field. *Paoli*, 35 F.3d at 732; FED.R.EVID. 703. To ensure that these requirements are met, "the judge [must] make a factual determination…that an expert is basing his or her opinion on a type of data *reasonably* relied upon by experts." *Paoli*, 35 F.3d at 748-49. Harman and Adolfson were both employed at the CVS facility at the time of the disputed move of the conveyor. Moreover, it is undisputed that they had contact with the conveyor in question in some capacity. The Court also finds that Professor deVries provided adequate reasoning for declining to rely on the contradictory testimony of two other witnesses. He stated that one of those witnesses ceased employment at the facility before the disputed move of the conveyor took place, and stated that the deposition testimony of the other witness was flawed in that the exact line of questioning did not involve whether the conveyor was moved, but rather referred only to changes to the conveyor itself. Having considered the remaining arguments presented in the briefs and at the *Daubert* hearing, the Court concludes that it was reasonable for Professor deVries to choose to rely on the statements of Harman and Adolfson.

The Court will therefore permit Professor deVries to testify as to the movement of the trash conveyor.

### c. Necessity and Value of the Trash Conveyor

Defendants argue that Professor deVries should not be permitted to testify as to the necessity and value of the trash conveyor. Defendants argue that Professor deVries's opinions on this issue are "nothing more than bald legal conclusions with respect to two elements of the statute of repose analysis, and should be excluded on that basis alone." (ECF No. 85 at 14.)

Moreover, Defendants argue that Professor deVries's opinions as to the necessity and value of the trash conveyor are unreliable because they are based on Professor deVries's common sense and nothing else. (*Id*. at 15.)

Plaintiffs argue that in challenging Professor deVries's opinion as to the necessity and value of the trash conveyor, Defendants ignore some of the facts on which Professor deVries bases his opinions. (ECF No. 94 at 14.) For example, Plaintiffs note that Defendants ignored Professor deVries's consideration that at least one split case picking line at the CVS facility "operated for decades without a trash conveyor…thus making it obvious that the trash conveyor is not necessary for the split case line's operation." (*Id*.) Plaintiff also states that Defendants ignore the fact that "if the facility went to full case picking rather than split case picking, then there would be no need for a trash conveyor and they could be quickly removed without affecting the facility or its operation in any way." (*Id*.)

The Court finds that Professor deVries's testimony as to the necessity and value of the trash conveyor is unreliable because it lacks any discernable methodology. The Court therefore excludes this testimony under Rule 702. While Plaintiff directs the Court to note the deposition testimony of Professor deVries in support of his opinion on this issue (*see* ECF No. 94 at 17), having reviewed the relevant portions of Professor deVries's deposition testimony, the Court finds that this testimony is merely conclusory and without support other than Professor deVries's speculation and common sense. *See* deVries Dep. 224: 6-16 (stating that "[t]he trash conveyor is not essential to the split case pick operation [and]…does not add value to the building," but providing no further support or analysis for those opinions).

In addition to Professor deVries's deposition testimony, the Court notes that Professor deVries provides a review of a CVS purchase order dated July 13, 2010, indicating that CVS purchased a trash line conveyor on that date to improve productivity. (ECF No. 85-1 at 40.) Professor deVries states that this purchase order indicates that as recently as 2010, there was a split case line that did not have a trash conveyor at the CVS facility, which he concludes indicates that the trash conveyor is not essential to the operation. (*Id.*) While Professor deVries's logic on this point is sound, the Court finds that this purchase order does not provide any basis for testing or analysis, and does not provide any identifiable methodology which Defendants could challenge. *See Fedor v. Freightliner, Inc.*, 193 F.Supp.2d 820, 829-30 (E.D. Pa. 2002).

Most importantly, the Court concludes that this testimony fails to satisfy the "touchstone" of the reliability assessment, because it would fail to "assist the trier of fact to understand the evidence or to determine an issue." FED.R.EVID. 702; *Paoli*, 35 F.3d at 744. Plaintiffs will be permitted to provide lay witness testimony related to the newly-installed trash line conveyor in 2010. Indeed, Professor deVries's report indicates that Plaintiff has testified that she worked on a split case pick line that did not have a trash conveyor. (ECF No. 85-1 at 40.) Professor deVries's proffered testimony as to necessity and value is not grounded in any discernable methodology and would add nothing to the trier of fact's ability to determine whether the trash line was indeed necessary or valuable, evidence of which can properly be offered through lay witness testimony. *See Bethea v. Bristol Lodge Corp.*, 2002 U.S. Dist. LEXIS 24411, at *17-18 (E.D. Pa. Dec. 18, 2002) (concluding that the proffered expert testimony was not reliable and posed no benefit in assisting the trier of fact where it was based on the expert's

"common sense," because the expert had failed to provide any methodology for his opinion that could be tested or subjected to expert review, but rather constituted only the expert's "instinctive reaction" to the materials provided) (citing *Oddi v. Ford Motor Co.*, 234 F.3d 136, 158 (3d Cir. 2000)).The Court will therefore exclude Professor deVries's testimony as to the necessity and value of the trash conveyor.

As noted above, although the Court determines that Professor deVries may not testify about the necessity and value of the trash conveyor, given the non-exclusive nature of the eight considerations in determining whether an object is a fixture for purposes of the Pennsylvania Statute of Repose, Professor deVries may still properly opine generally, based on his assessment of the other relevant factors, as to whether the trash conveyor is integral to the operation. *See Noll*, 537 Pa. at 288-89.

## 2. The Reliability of Professor deVries's Testimony That the Alleged Defect Caused Plaintiff's Injury

As outlined in his report, Professor deVries reached the conclusion that "Dematic's failure to provide a guard [to cover the nip point on the trash conveyor] created an unreasonably dangerous condition on the trash conveyor in the area of the nip point, and resulted in injury to Ms. McKenzie." (ECF No. 85-1 at 65.) Defendants argue that Professor deVries should not be permitted to testify that this alleged design defect in the trash conveyor caused Plaintiff's injury. (ECF No. 85 at 12-15.) Defendants argue that Professor deVries's chain of causation as outlined in his deposition is unreliable and is based on his "blind acceptance of [P]laintiff's testimony." (*Id.* at 12.) Defendants therefore argue that Professor deVries should not be permitted to render an expert opinion on (1) whether a piece of plastic was dangling from

the roller, or (2) whether Plaintiff's arm was drawn into the roller by the plastic. (*Id*.) Further, Defendants argue that because Professor deVries's "overall causation opinion is incomplete without these building-block opinions," he should be more broadly excluded from testifying as to whether a design defect caused Plaintiff's injury. (*Id*.)

Plaintiff asserts that Defendants' arguments on this point are an indirect attempt to ask the Court to reconsider its denial of Defendants' Motion for Summary Judgment. (ECF No. 94 at 15.) Moreover, Plaintiff argues that Defendants mischaracterize Professor deVries's expert opinion. Plaintiff characterizes Professor deVries's opinion on causation as follows: "Defendants' failure to guard [the] nip-point constituted a defective design. If the nip-point was guarded as it should have been, no one would have been able to come into contact with the nip-point, thereby avoiding the injury." (*Id*. at 16.) Finally, Plaintiff argues that the questions raised in Defendants' brief constitute, at best, issues for the jury to consider when determining how much weight to afford Plaintiff's rendition of the accident and do not form a basis to exclude Professor deVries's testimony. (*Id*. at 18.)

Addressing each portion of testimony with which Defendants take issue in turn, the Court first discusses Professor deVries's proffered testimony as to whether a piece of plastic was dangling from the roller. The Court finds that this proffered testimony is reliable. "An expert may base an opinion on facts or data in the case that the expert has been made aware of." FED.R.EVID. 703. Here, Professor deVries properly relied on Plaintiff's account of the circumstances leading up to the incident at issue in this case.

Specifically, Professor deVries relied on Plaintiff's deposition testimony wherein she stated that she "noticed the piece of plastic stuck to the bar code wrapped around the roller, and [] decided to try to get it off of the roller. It was flapping around." (ECF No. 85-1 at 11 (citing McKenzie Dep. 84:3-6.)). Moreover, Professor deVries submitted an affidavit wherein he provided reliable support for the reasonableness of Plaintiff's account of the positioning of the plastic just before the incident. (deVries Aff. at A1.) Defendants argue that permitting Professor deVries to testify as to the fact that the plastic was dangling constitutes "blind acceptance of Plaintiff's testimony" and is improperly framed as expert opinion. (ECF No. 85 at 16.)

The Court disagrees, and finds instead that Defendant has properly relied on factual assumptions based on deposition testimony in the record in reaching his ultimate conclusion that the alleged defect caused Plaintiff's injury. Professor deVries's affidavit provides discernable methodology, which Defendants will be able to challenge at trial, for how Professor deVries arrived at the conclusion that Plaintiff's account of the events is reasonable. While it is true that the finder of fact will determine whether in fact the plastic was dangling from the roller, Professor deVries is not precluded from forming an opinion based on the reasonable assumption that the plastic was dangling solely because this is a disputed fact. *See Newill v. Campbell Transp. Co., Inc.*, 2015 WL 222332, at *3 (W.D. Pa. Jan. 14, 2015) ("There is a critical distinction between an expert testifying that a disputed fact actually occurred or that one witness is more credible than another and an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine. The former is manifestly improper, the latter is not.") (internal quotations and citation omitted); *Gucker*, 2015 U.S. Dist.

LEXIS 157901, at *6 ("Challenges to the factual foundation of expert opinions…go to the weight of such testimony which is more appropriately addressed through cross-examination at trial."); *Viking Yacht Co. v. Composites One LLC*, 613 F.Supp.2d 626, 633 (D.N.J. 2009) (concluding that "the representations by Plaintiffs' personnel were sufficiently reliable to permit [the expert] to incorporate that data into his analysis" and noting that the party opposing the testimony would have the opportunity to challenge the relevant issues via cross-examination). Professor deVries will accordingly be permitted to testify as to the cause of Plaintiff's injury based on the assumption that the facts and circumstances surrounding the incident were as she described them.

Secondly, the Court addresses Professor deVries's proffered testimony as to whether Plaintiff's arm was drawn into the roller by the plastic. The Court finds that Professor deVries's testimony as to this issue fails to satisfy the reliability requirement of Rule 702 and that testimony as to this issue would not assist the trier of fact. As discussed above, Professor deVries is permitted to rely on Plaintiff's account of the incident when forming his opinion. However, an expert's conclusions regarding causation "must have a basis in established fact…or if based on assumed facts, there must be some basis for the assumptions in the record." *Wicker v. Consolidated Rail Corp.*, 371 F.Supp.2d 702, 735 (W.D. Pa. 2005) (internal quotations omitted).

Here, as Defendants point out, there is no fact in the record suggesting that Plaintiff's arm was drawn into the roller by the plastic. Nor is there a basis in the record for the assumption that Plaintiff's arm was drawn into the roller by the plastic. (ECF No. 85 at 14.)

Professor deVries includes in his report portions of Plaintiff's deposition testimony in which she describes the incident as follows: "I went to grab for the piece of plastic…and when I did, the gloves that we wore had a rubber palm, and it caught on the metal. I touched the metal when I went to grab for the plastic, and it caught that rubber and sucked my right arm into the roller." (ECF No. 85-1 at 11 (citing McKenzie Dep. 84:7-13).) *See also* McKenzie Dep. 105:6-7 ("[A]fter my glove stuck to the metal, it sucked my hand in slowly."). Plaintiff's deposition testimony leaves no room for the assumption that Plaintiff grabbed the piece of plastic which then pulled her arm into the roller. Rather, she is unequivocal in stating that, after she reached for the plastic, the rubber on her glove touched the metal which then caused her arm to get pulled into the roller. While Professor deVries is permitted to form his opinions as to causation based on assumptions derived from facts in the record, he is not permitted to form opinions that are flatly contradicted by facts in the record. *See Wicker*, 371 F.Supp.2d at 735. Such testimony is unreliable inasmuch as it is unsupported by any fact in the record, and as a result, it is incapable of assisting the trier of fact as Rule 702 requires. Therefore, Professor deVries is precluded from testifying as to whether Plaintiff's arm was drawn into the roller by the plastic.

Finally, the Court rejects Defendants' argument that Professor deVries's testimony as to causation should be excluded in its entirety. In support of the argument that Professor deVries's testimony as to causation should be excluded, Defendants argue that Professor deVries's "overall causation opinion is incomplete" without the two "building-block opinions" discussed above. (ECF No. 85 at 12.) The Court concluded that Professor deVries may accept Plaintiff's testimony that the plastic was dangling from the roller as true for purposes of reaching his

ultimate conclusion that the alleged defect caused Plaintiff's injury. Although the Court concluded that Professor deVries may not testify as to whether Plaintiff's arm was drawn into the roller by the plastic, the Court finds that this piece of Professor deVries's testimony is not vital to his overall theory of causation. Even if the piece of plastic did not draw Plaintiff's arm into the roller, Professor deVries's opinion that the failure to include a guard was the cause of Plaintiff's injury is still viable and is adequately supported by Professor deVries's findings as outlined in his expert report. (ECF No. 85-1.)

The Court therefore grants Defendants' motion to exclude Professor deVries's testimony as to whether the plastic drew Plaintiff's arm into the roller, but denies Defendants' motion to exclude Professor deVries's testimony as to causation more generally.

## IV. Conclusion

For the foregoing reasons, the Court grants in part and denies in part Defendant's motion to exclude, in part, the expert testimony of Mr. deVries. (ECF No. 84.)

An appropriate order follows.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRANDI L. MCKENZIE,** | ) | |
| | ) | **CIVIL ACTION NO. 3:12-250** |
| Plaintiff, | ) | |
| | ) | **JUDGE KIM R. GIBSON** |
| v. | ) | |
| | ) | |
| **DEMATIC CORP., ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this _2 2nd_ day of February, 2016, upon consideration of the Defendants'

Motion to Exclude, in Part, the Testimony of Roelof H. deVries (ECF No. 84), Plaintiff's response

in opposition (ECF Nos. 93, 94), Defendants' Omnibus Reply Brief (ECF No. 101), and Plaintiff's

Omnibus Sur-Reply Brief (ECF No. 103), upon further consideration of the arguments presented

at the *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)/Rule 702 hearing, and in

accordance with the foregoing memorandum opinion of this Court, **IT IS HEREBY ORDERED**

that Defendants' motion is **GRANTED IN PART** and **DENIED IN PART** as follows:

- Professor deVries may present opinion testimony as to whether the trash conveyor was integral to the CVS facility.

- Professor deVries may present opinion testimony as to the relationship between the trash conveyor and the CVS facility, including the installation and removal process and the movement of the trash conveyor.

- Professor deVries may not present opinion testimony as to whether the trash conveyor is essential to the split case pick operation.

- Professor deVries may not present opinion testimony as to whether the trash conveyor adds value to the building.

- Professor deVries may present opinion testimony as to whether the alleged design defect caused Plaintiff's injury, including whether a piece of plastic was dangling from the roller.

- Professor deVries may not present opinion testimony as to whether the piece of plastic drew Plaintiff's arm into the roller.

BY THE COURT:

**KIM R. GIBSON**
**UNITED STATES DISTRICT JUDGE**